## IN THE CIRCUIT COURT OF MILLER COUNTY, ARKANSAS

BETTY MOSS, §
§
PLAINTIFF, ON BEHALF OF HERSELF §
AND ALL OTHERS SIMILARLY §
SITUATED; §
§
VS. §
§
THE COCA-COLA COMPANY, §
§
DEFENDANT. §

NO. CV 2012-0204-1

## CLASS ACTION COMPLAINT

COMES NOW BETTY MOSS, Plaintiff, on behalf of herself all others similarly situated, files her Class Action Complaint against The Coca-Cola Company, Defendant, and respectfully alleges the following:

### I.

### INTRODUCTION

1.      Plaintiff Betty Moss ("Plaintiff"), a citizen of Miller County, Arkansas, seeks certification of this action as a class action under Ark. R. Civ. P. 23. Plaintiff, since April 2008, has purchased numerous times in Miller County, Arkansas Simply Orange orange juice ("Simply Orange"), a product of Defendant The Coca-Cola Company ("Coca-Cola" or "Defendant"), the leading producer and marketer of branded fruit juices.

2.      Coca-Cola has falsely claimed its heavily processed, designed and modified "not-from-concentrate" Simply Orange is "100% Pure Squeezed Orange Juice" and "a pure, natural orange juice with a taste that's the next best thing to fresh-squeezed." In truth, Coca-Cola's Simply Orange is heavily processed and flavored – it is not 100% pure or natural.

CLASS ACTION COMPLAINT                                                    Page 1

3.    Mass marketed orange juice such as Coca-Cola's cannot be fresh squeezed as fresh squeezed orange juice is unstable and has a short shelf-life. Fresh squeezed orange juice has a shelf life of approximately ten days refrigerated and between three and six months frozen. Industrial processing and storage improves shelf-life, but adversely affects the flavor, aroma, and nutritional qualities of orange juice. Nonetheless, to extend shelf-life, Coca-Cola's Simply Orange undergoes extensive processing which includes the addition of aromas and flavors. This extensive processing changes the essential nature of Simply Orange sold by Coca-Cola. It is not "pure, natural orange juice." Rather, it is a product that is extensively processed and manipulated, and engineered in laboratories, which explains its shelf-life of more than two months.

4.    Coca-Cola is well aware that consumers want and demand natural products, and it seeks to take advantage of that consumer preference by deceptively promoting and marketing its Simply Orange as "pure" and "natural" orange juice even though it has been pasteurized, deaerated, stripped of its flavor and aroma, stored for long periods of time before it ever reaches consumers, and then flavored, before it is packaged directly into the carton. Some of the non-natural aspects of these processes include:

> a.    the removal of naturally present air from the intercellular spaces of the juice through the deaeration process;
>
> b.    the reduction and deactivation of naturally occurring enzymes and microbial activity through pasteurization;
>
> c.    long term storage of deaerated and pasteurized juices for a year or longer;
>
> d.    the addition of chemically engineered "flavor packs" to mimic the flavor that natural orange juice has, which because it is natural, requires no flavor pack; and

**CLASS ACTION COMPLAINT**                                                        Page 2

e.  the mixing of numerous types of oranges from Florida and Brazil that are then flavored to cover up the varietal and geographic differences.

5.  Rather than conveying a truthful message that Simply Orange actually is a heavily processed, pasteurized, deaerated, and flavored beverage, Coca-Cola instead markets its Simply Orange deceptively by stating simply that it is not reconstituted from concentrate and that it is "gently pasteurized."

6.  Through Coca-Cola's deception, consumers are left with the false belief that Simply Orange is akin to fresh squeezed orange juice. Coca-Cola's Simply Orange is not fresh orange juice and its taste is a result of added flavoring not "gentle" processing as Coca-Cola suggests in its marketing materials and advertisements.

7.  Due in part to their false belief of the purity and freshness of Simply Orange, consumers are willing to pay a premium price for Simply Orange. Additionally, Coca-Cola's ability to extract a premium for its Simply Orange would not be possible without the flavoring provided by the flavor pack.

8.  Coca-Cola falsely claims it does not add flavoring to Simply Orange in its advertisements. But Coca-Cola uses blending and flavor packs to maintain uniform quality of Simply Orange so that regardless of the season consumers purchase a uniform product with a uniform taste that would be impossible with a fresh squeezed natural orange juice.

9.  Plaintiff seeks relief in this action individually and as a class action on behalf of all citizens of Arkansas. The purpose of this action, once certified as a class action, is to right the wrongs Coca-Cola has done to Plaintiff and to the thousands of Arkansas Class members just like her.

CLASS ACTION COMPLAINT                                              Page 3

## II.

## CLASS DESCRIPTION

10.    Under Ark. R. Civ. P. 23 Plaintiff seeks certification of the following class ("the

Class"):

> *Citizens of Arkansas that have purchased Coca-Cola's Simply Orange, labeled*
> *and marketed as being "100% Pure Squeezed Orange Juice," at any time from*
> *April 2008 to the present.*

Excluded from the Class are the following individuals or entities:

    a.    Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out that will be formally established by the Court;

    b.    Any and all federal, state, or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

    c.    Coca-Cola, its parent, subsidiaries and affiliates, their directors and officers and members of their immediate families;

    d.    Any currently sitting Arkansas state court judge or justice in the current style and/or any persons within the third degree of consanguinity to such judge or justice;

## III.

## PARTIES

11.    The named Plaintiff and putative class representative, Betty Moss, is a resident of

Miller County, Arkansas, and has resided there from before April 2008 until present day.

12.    Defendant, The Coca-Cola Company, is a Delaware corporation with its principal

place of business located at One Coca-Cola Plaza, Atlanta, Georgia. Defendant manufactures,

markets, and sells Simply Orange nationwide and in Arkansas, including in Miller County,

Arkansas. Defendant, a foreign for-profit corporation registered to do business in Arkansas, may

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 4 of 34

be served with process by and through its registered agent for process in Arkansas: The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

## IV.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action and venue is proper because The Coca-Cola Company generally does business, distributes, advertises and sells its Simply Orange and other beverage products within Miller County, Arkansas. The named Plaintiff is a resident of Miller County, Arkansas, has been at all relevant times, well before April 2008, and has sustained the damages and harm as alleged herein in Miller County, Arkansas.

## V.

## NON-REMOVABILITY PURSUANT TO A.R.C.P. 8(a)

14.     There is no basis for federal-question jurisdiction under 28 U.S.C. §1331. Plaintiff, as putative Class representative and individually, admits, represents and stipulates that she excludes any cause of action which would create federal question jurisdiction and make this case removable on that basis.

15.     Plaintiff, also as putative Class representative and individually, admits, represents and stipulates that the amount in controversy as to Plaintiff and each member of the Class is less than $75,000.00, exclusive of interest and costs, as further explained in the sentences and paragraphs below. Accordingly, this matter is not removable on the basis of complete diversity under 28 U.S.C. §1332(a).

16.     Neither is this matter removable on the basis of the Class Action Fairness Act of 2005 ("CAFA"). *E.g.* 28 U.S.C. §1332(d). Plaintiff, as putative Class representative and individually, admits, represents and stipulates that the maximum final, total, aggregate judgment

she will seek on behalf of the Class, as Class representative, and regardless of the theory of recovery on which judgment is based, will be $4,999,999.00, and that in the event any additional factors (*e.g.*, without limitation, exemplary damages, statutory penalties, statutory or common fund attorneys' fees, class representative incentive award(s), equitable recoveries, pre-or post-judgment interest, recovery of court costs or the like) might otherwise engender a final Class judgment amount or recovery in excess of $4,999,999.00, that she is not, on the Class's behalf, seeking any judgment or recovery of any amount in excess of $4,999,999.00, that she disclaims any such excess amount, and that she, on the Class's behalf, will not accept any final judgment recovery or award in excess of $4,999,999.00, such that those additional factors should not be considered at all by the Court in rendering final judgment.

17.    Further, undersigned putative Class counsel admits, represents and stipulates that they are not seeking any award of attorneys' fees, common fund or otherwise, which would cause, in any way, the final judgment in this matter to exceed the sum of $4,999,999.00, and they specifically disclaim any such any attorney fee claim or award.

18.    These representations, stipulations and admissions above are enforceable under, without limitation, the Arkansas law[1] relating to judicial estoppel, the doctrine against inconsistent positions, the binding effect of stipulations, and the pleading of damages under Ark. R. Civ. P. 8(a), or otherwise.    The enforceability of these damages-related representations, stipulations and admissions precludes removal of this case under CAFA due to lack of any subject matter jurisdiction conferred by CAFA. *E.g. Rolwing v. Nestle Holdings, Inc.,* 666 F.3d 1069 (8th Cir. 2012); *Bell v. Hershey Co.,* 557 F.3d 953, 958 (8th Cir. 2009) (in discussing CAFA's application, noting Arkansas procedural rules permit a plaintiff to plead his or her

---

[1]  By asserting Arkansas law would govern this issue, Plaintiff does not waive the right, if she so chooses, to have Georgia law apply to other issues in this case, utilizing the appropriate Arkansas conflicts and choice of law principles.

sought-after damages with specificity); *Clark v. Welspun Tubular LLC*, No. 5:11-cv-321, 2012 U.S. Dist. LEXIS 17836 at (E.D. Ark. Feb. 14, 2012)("The Court denies the motion to remand. The complaint does not include a comprehensive stipulation capping recovery in all forms.")[2] Any attempt by Defendants to remove this case in light of well settled precedent would be frivolous, will harm Plaintiff and the putative class with unnecessary delay, costs and fees, and will force Plaintiff to seek sanctions, attorneys' fees and costs. Sanctions, attorneys' fees and costs would be appropriate in that non-removability of this case as plead is well settled and not a matter of academic or jurisprudential nuance. *See, Bell v. Hersey Company*, 567 F.3d 953, 958 (8th Circuit 2009); *Murphy v. Reebok International, Ltd.*, 2011 U.S. Dist., LEXIS 46983; *McClendon, et al. v. Higgs*, 2011 U.S. Dist. LEXIS 89266; *Thompson, et al, v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 73861.]

## VI.

### GENERAL FACTUAL ALLEGATIONS

**A.  Coca-Cola's Simply Orange Is Not Pure, Fresh or Natural**

19.    The allegations set forth in paragraphs 1-18 herein are incorporated into this section (and into the following sub-sections A-H) by reference as if set forth verbatim.

20.    The term "not-from-concentrate" is intended to denote juice that is fresh or close to just squeezed.  While consumers may understand Coca-Cola's Simply Orange is not from concentrate, consumers do not know what it actually is.  Without a source of information other than Coca-Cola and the Simply Orange label itself, consumers are left knowing very little about the actual contents of a carton of Simply Orange because of the gap that Coca Cola creates

---

[2] Here, in contrast, this Complaint <u>does</u> contain a comprehensive stipulation capping recovery in all forms at $4,999,999.00.

between the reality of its heavily processed Simply Orange product and Coca Cola's marketing rhetoric.

21.     Coca-Cola understands that consumer perceptions of foods and in particular, natural foods, affect purchasing decisions and consumption. The term "natural" carries overtones of purity and health. For more than a quarter century, surveys have shown that consumers prefer to buy natural foods whenever possible and that they believe that natural foods taste better than other foods.   Similarly, surveys have long shown that a majority of consumers expect that a "100% natural" food is healthier for you and would be more expensive.

22.     Consumers do not consider processed foods as nourishing as fresh, unprocessed foods.  "Natural" was the number one descriptor consumers looked for when purchasing food and drinks at retail stores in 2010.  Nearly 70% of consumers are extremely or very interested in and aware of natural foods generally and more than half of all consumers are extremely or very interested in natural beverages specifically.   At the same time, consumers eschew and deliberately avoid foods and beverages containing preservatives, added flavoring, added colors, and other chemical additives.

23.     All things considered, consumers consider safety, taste and purity more important than price when shopping for food and beverages, and will therefore, pay a premium for pure and natural products.  Consumers' favorable views of natural beverages influence their behavior and – importantly for Coca-Cola – purchasing decisions.

24.     Coca-Cola understands the importance and value of descriptors and labels with the words "fresh," "natural" and "pure" to consumers when considering whether to buy foods and beverages.  Coca-Cola also realizes that consumers are increasingly aware of the relationship

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 8 of 34

between health and diet and that consumers are demanding fresh and natural products that are minimally processed.

25.     Coca-Cola recognizes the growing interest in premium quality juices, with very mild pasteurization, distributed refrigerated and with a limited shelf-life. Growth of Simply Orange sales has been fueled by consumer perception that Simply Orange is a more natural and premium product than reconstituted orange juice made from concentrate and frozen concentrate.

26.     Throughout Coca-Cola's marketing materials, advertising, website, labeling, packaging and point-of-sale materials, Coca-Cola represents that its Simply Orange contains no flavoring, is "unfooled around with," and natural.

27.     Coca-Cola also maintains a website for the promotion of its Simply Orange where Coca-Cola makes the following representations:[3]

### Plant Tour

Welcome to the simply orange tour. This is our plant (orange tree), these are our workers (oranges on tree), this is upper management (picture focuses on sun). *But what you won't find around here is any freezing, flavoring or concentrating. Which brings us to our end product: Simply Orange.*

Honestly simple.
(Emphasis added)

### Secret Recipe/February 13, 2012

Serene, picture of orange grove, sound of birds chirping.
So, how exactly does SO always taste so fresh and delicious? Well, we're prepared to share our secret recipe. Grab a pen. Ready? *We start with oranges and then we add---nothing! Shocking, I know. Simply Orange. Honestly simple.*
(Emphasis added)

---

[3]     At one time available at http://www.Coca-Cola.com/#/trop_products/productsLanding

CLASS ACTION COMPLAINT                                                    Page 9

**No Version 2.0**

No flashy upgrades. . . *You started unfooled around with. And that's just the way you are going to stay. Not new, not improved. So perfect. Simply Orange. Honestly simple.*
(Emphasis added)

**Instructions**

*Do not sweeten, do not concentrate. Do not disturb. Nature at work. Simply Orange. Honestly simple.*
(Emphasis added)

28.     So along with emphasizing that its Simply Orange is natural, Coca-Cola repeatedly touts its simplicity, freshness, and purity.

29.     Coca-Cola recognizes that consumers are increasingly concerned about the types of foods they put into their bodies and the role of good nutrition and overall health and well-being.

30.     While Coca-Cola claims that Simply Orange is "Honestly Simple," pure, and natural, Simply Orange is far more complex and scientific.

31.     Coca-Cola's Simply Orange is not "simply" orange juice, but rather is an extensively processed and flavored beverage.

32.     Coca-Cola unscrupulously capitalizes on consumers' heightened demand for natural products by deceptively marketing its Simply Orange.

**B.     Coca-Cola's Simply Orange Is Extracted At Massive Processing Plants**

33.     Between April 2008 and present day, Coca-Cola included juice extracted from various types of sweet oranges that were processed at massive orange juice processing plants in Florida and Brazil.  These orange juice processing plants utilize Brown International or FMC

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 10 of 34

juice extraction systems or other similar juice extraction equipment, which are controlled by computers in an essentially automated process.

34. Brown International Corporation systems recover orange juice by reaming. The reamers and cups are mounted in a vertical plane. The reamer heads are attached to turning shafts on the two faces of a revolving cylindrical drum. A feed wheel transfers oranges past a knife, which halves each fruit, to a chain of cups. The cups deliver the orange halves to the reamers, the juice is collected beneath the reamers, and the reamed half-peels are ejected from the cups by a device called a kicker, which fits into a slot in the cups. There are two product streams recovered at the juice extractor: the pulpy juice and the peel residue. These streams are recovered beneath the extractor lines for further processing. The extracted juice stream goes to a primary finisher with a larger-hole screen size to separate the pulpy juice from the membranes, rags, and seeds. The pulpy juice stream goes to another finisher with a smaller screen to effect separation of the juice and pulp.

35. FMC extractors operate on the principle of instantaneous separation by squeezing the juice from the fruit. The extractors are arranged in linear rows. The upper and lower cups start to converge upon an orange held by the extractor. The upper and lower cups cut two holes in the fruit and continue converging until the peel is separated from the fruit. Peeled fruit is then squeezed into a strainer tube, which separates juice from seeds and the rest of the fruit.

36. Since the fruit must be peeled carefully before the juice is extracted to eliminate peel oil in the juice, which is not commercially possible at the massive facilities where Coca-Cola's Simply Orange is extracted, the usual industrial practice is to remove excess oil during a separate de-oiling step.

C. Natural Orange Juice Is Not De-Oiled

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 11 of 34

37.     Coca-Cola endeavors to maximize juice yield from its oranges.  Consequently, the juice ends up with too much peel oil.

38.     Because peel oil can reduce the quality of Simply Orange, Coca-Cola removes excess peel oil by vacuum stripping or de-oiling centrifuges.

39.     Coca-Cola, however, removes more oil than may otherwise be necessary so that it can add back its desired flavoring and standardize the Simply Orange taste.

**D.    Natural Orange Juice Does Not Undergo Deaeration**

40.     "Air is naturally present in the intercellular spaces of fruits.  During fruit maceration, homogenization, and juice extraction cells are crushed, the cell wall is disrupted and air is mixed into the juice.  Air can be present as dissolved gas in solution or associated with the pulp particles, for example, in orange juice.  During cell disruption, metabolites and enzymes that are normally compartmentalized are mixed, producing chemical and biochemical reactions.  Oxygen in air, present in the spaces between the juice vesicles, and from the surroundings, saturates the juice producing oxidation reactions that often result in browning, changes in aroma, and loss of nutritional value.  These reactions are exacerbated by the increase in temperature during pasteurization and reduce the overall quality of the product during storage." R. Garcia-Torres, N.R. Ponagandla, R.L. Rouseff, R.M. Goodrich-Schneider & J.I. Reyes-De-Corcuera, *Effects of Dissolved Oxygen in Fruit Juices and Methods of Removal*, 8 Comprehensive Rev. in Food Sci. & Food Safety 409 (2009) (emphasis added).

41.     Because oxygen reduces the quality of stored orange juice, Coca-Cola subjects its juice to a deaeration process that removes dissolved oxygen from the juice.

42.     Coca-Cola deliberately fails to mention that after being squeezed from oranges, its Simply Orange undergoes deaeration, which strips the juice of oxygen, so it does not oxidize.

**CLASS ACTION COMPLAINT**                                              Page 12

43.     Flash or vacuum deaeration is the most common method of deaeration in the citrus industry.  This method of deaeration "performs the dual role of removing oxygen and removing excess peel oil from orange juice before pasteurization.  This operation is called 'flash deaeration' because of the sudden decrease in pressure that preheated juice undergoes as it enters the deaeration tank, producing a practically instantaneous separation." *Effects of Dissolved Oxygen*, 8 Comprehensive Rev. in Food Sci. & Food Safety 417 (2009).

44.     Importantly, when orange juice is stripped of oxygen it is also stripped of important volatile compounds that provide flavor and aroma.

45.     To ensure a high elimination of dissolved oxygen, Coca-Cola preheats its Simply Orange before deaeration.  Heating orange juice further alters its flavor and reduces its aromatic quality.

**E.     Natural Orange Juice Is Not Pasteurized and Then Stored For Up To One Year**

46.     Coca-Cola's Simply Orange is also pasteurized to improve its shelf-life, but the improved shelf life comes at the expense of the delicate flavor and aromatic quality of the juice.

47.     Pasteurization, a form of thermal processing, reduces, inactivates, or eliminates enzyme and microbial activity in orange juice to extend its shelf-life, but also further reduces aroma and flavor qualities, and produces undesirable off-flavor and off-odor compounds.

48.     Pasteurization profoundly effects aroma composition and can create off-flavors or their precursors from Maillard, Strecker, and acid-catalyzed hydration reactions.

49.     Heating causes irreversible damage to the flavor of orange juice.

50.     Numerous tests have revealed the effect of pasteurization on the aromatic composition of orange juice and the decrease in the amounts of important flavor and aroma compounds like acetaldehyde, ethyl butyrate, and hexanal.  Finally, aroma and flavor volatiles

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 13 of 34

are further altered by storage. In fact, increased storage time leads to a decrease in sweet odor, strength of the orange odor, sweet flavor, sour flavor, and orange aftertaste, and increases off-flavors and off-odors.

51.　Coca-Cola advertises that its Simply Orange is "not from concentrate, freshly squeezed, and gently pasteurized," again pushing the freshness of the product, yet fails to disclose to consumers that its product may be made from orange juice that has been pasteurized and, with precise nitrogen blanketing and mixing, stored for a year or more at a temperature of 30 degrees in multi-million gallon tanks at a tank farm. It has been reported that tanks have been used for over 4 years without being cleaned or re-sterilized. This extended stopover between "grove and glass" is never mentioned in Coca-Cola's advertising.

52.　"There has been no technological breakthrough or identification of flavor constituents that would enable thermally pasteurized juice or reconstituted concentrate to taste exactly like fresh juice.... It may be simply stated that heating irreversibly and negatively alters juice flavor, so that it no longer has the aroma and character of fresh juice." Dan Kimball, Mickey E. Parish & Robert Braddock, *Oranges and Tangerines, Processing Fruits*, Science and Technology 630 (Diane M. Barret et al. eds., 2d ed., 2004).

53.　These are not sophisticated scientific tenets and Coca-Cola understands that: pasteurization changes physical and chemical properties of orange juice; heat drives off volatiles altering the original flavor of the fresh orange juice; and increased storage time and temperature conditions of storage can cause orange juice to deteriorate in taste and nutritional value.

54.　Pasteurization is neither the only, nor necessarily the most altering step of Coca-Cola's production of Simply Orange.

CLASS ACTION COMPLAINT

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 14 of 34

55.     Prior to storage in the aseptic tanks Simply Orange is often heated again and is regularly heated once more before it goes into the package.

56.     Coca-Cola knows that the more the Simply Orange is heated the more its flavor is depleted.

**F.     Natural Orange Juice Is Not Processed with Flavor Packs**

57.     Freshly squeezed orange juice smells and tastes fresh naturally. However, after the volatiles are stripped away from the orange juice and it is processed, the remaining Simply Orange is essentially an insipid, sugary, orange liquid that lacks the flavor and aroma of orange juice.

58.     Orange volatile flavor components can be separated into one of two broad categories. The first is the oil-soluble constituents in peel oil and in juice oil. The other flavor components consist of the water-soluble constituents present in the juice.

59.     The majority of the characteristic flavor of fresh squeezed orange juice comes from the water-soluble components found in the juice sacs. These components are lost during processing, deaeration, pasteurization, and long term storage.

60.     Without the addition of flavoring and aroma, Simply Orange would not only be unappealing to consumers, but would also be nearly undrinkable.

61.     To revive this liquid to a saleable product, and unbeknownst to reasonable consumers, Coca-Cola re-flavors the product to taste like natural orange juice through the addition of flavor packs.

62.     Flavor packs are unnatural and are scientifically produced and designed in laboratories by chemists, food scientists and flavorists.

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 15 of 34

63.     The process of creating an objective flavor by blending various natural and/or synthetic aromatic materials is called formulation. Relying on olfaction and years of training and education, flavorists and perfumers select and blend numerous aromatic compounds for Coca-Cola in conformity with Coca-Cola's needs and product concepts to develop flavoring so that the Simply Orange will have a flavor that includes three different building blocks:

        a.    **Top Note** – the top note of flavors is composed of aroma components that volatilize rapidly and have lower flavor retention. Top note defines the first impression of the flavor.

        b.    **Middle Note** – the middle note of flavors consists of aroma components that subsequently volatilize and have moderate flavor retention, and also forms the main body of the flavor.

        c.    **Base Note** – the base note is a class of residual aroma components that volatilize very slowly and can linger for long periods of time. The base note contributes to determine aroma properties of the flavor.

64.     During pasteurization and deaeration, the components that compose the top note and middle note are lost from Simply Orange. Coca-Cola understands that for its Simply Orange to have a refreshing and juicy character, it needs to have a strong top note.

65.     Flavorists and flavor packs, not the grower in the grove or the fruit itself, give Simply Orange its distinctive taste. Thus, the distinctive taste of Simply Orange is a product of science (i.e., flavor packs), not the fruit.

66.     The main purposes of the flavor packs are: to provide and intensify aromas and flavors; to supply flavors and aromas that are lost during processing; to suppress or mask undesired flavors that are created during processing and longterm storage; and also to enhance consumer acceptance.

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 16 of 34

67. Flavorists process orange oils into various types of flavor materials with different levels of notes, flavor intensity, stability, and functionality, which enable Simply Orange to maintain its characteristic flavor 365 days a year.

68. Flavorists use microbiological and enzymatic processes to convert limonene and other peel oil compounds into other, more valuable flavor compounds because of consumers' preference for "natural" flavors.

69. Since both microbial and enzymatic bioconversions are natural processes, Coca-Cola and its flavorists view the resulting products from the bioconversion of orange peel oil components into more valuable flavor compounds as natural.

70. Reasonable consumers would not view orange juice containing flavor compounds derived from microbial or enzymatic bioconversion as "100% Pure Squeezed" or natural.

71. Similarly, flavor components can be obtained by removing terpene hydrocarbons from the recovery essence oil by distillation or extraction. This process is also not natural.

72. Flavorists specially design flavor packs that include water-soluble liquid flavors or emulsified flavors to satisfy Coca-Cola's specific needs and requirements.

73. Emulsified flavors are obtained by adding water and emulsifiers and stabilizers to a flavor base, followed by homogenization. Emulsified flavors do not dissolve, but disperse. To ensure their dispersion state for a long time, the specific gravity of the emulsified flavors is adjusted to a value comparable to Simply Orange.

74. Flavorists design the flavor packs to emphasize and highlight certain aromas and flavors associated with orange juice by fractionating orange oil and essence into individual components, reformulating them, and blending them in varying mixtures. The aroma and flavoring added to Simply Orange bears little resemblance to the natural orange oil and essence

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 17 of 34

that leaves the juice during deaeration or that is altered during pasteurization or storage because of flavor interactions that occur during flavoring.

75.     Coca-Cola also uses flavor packs to improve the flavor and aroma of lower quality juice.

76.     Coca-Cola's distinctive taste is the product of a recipe created by scientists and flavorists and not a product of nature.

77.     While no single volatile can be considered a character impact compound, it is generally accepted that fresh orange flavor and aroma are the result of a collection of aroma active volatiles present in low concentrations and it is fairly well accepted that total aldehydes and esters play an important role in orange juice flavor.

78.     Aldehydes are found at high concentration in fresh orange juice. Aldehydes, however, are so chemically reactive that their concentrations are altered by thermal processing.

79.     For example, studies have shown that acetaldehyde is reduced by thermal processing. Acetaldehyde is the major volatile aldehyde present in orange juice and studies have also shown that it is a major contributor to the fresh, pungent odor quality of freshly squeezed orange juice.

80.     Similarly, esters are another group of chemical compounds that provide important flavor and aroma components for freshly squeezed orange juice. Total ester concentration has also been suggested as a measure of orange aqueous essence strength and quality.

81.     Ethyl butyrate, also known as ethyl butanoate, is one of the most intense odorants in orange juice and it is fairly well accepted that it is the single most important ester in orange juice.

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 18 of 34

82.     Coca-Cola adds high concentrations of specific chemical compounds to highlight the "candy" flavor of Coca-Cola's Simply Orange.

83.     Coca-Cola adds ethyl butyrate to its Simply Orange because it provides the "freshest" characteristics to Simply Orange.  The addition of ethyl butyrate, which is water-soluble, dilutes the Simply Orange.

84.     Hydrocarbons are another chemical compound whose concentration is low in freshly squeezed orange juice, but vastly greater in Coca-Cola's highly processed Simply Orange.

85.     The simple addition of orange peel oil to Simply Orange would not create Coca-Cola Simply Orange's distinctive flavor or mask the effects of the juice's extensive processing because more than 90% of the peel oil consists of terpene hydrocarbons, mainly limonene, but terpene hydrocarbons provide very limited flavor and aroma in orange juice.

86.     For example, limonene, the most prevalent terpene hydrocarbon, has little, if any, direct flavor or aroma impact because of its high odor thresholds.

87.     Moreover, while limonene is a major constituent in processed orange juice, including Simply Orange, its concentration in freshly squeezed orange juice is much lower because of the elevated levels of peel oil that are introduced into the juice during commercial juice extraction.

88.     The mixture of volatile compounds with aroma activity is responsible for the characteristic aroma of orange juice.

89.     Coca-Cola adds aroma and flavoring to its Simply Orange – the addition of which serves a technical function – to provide its processed orange juice an aromatic and flavor profile

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 19 of 34

closer to fresh juice and to mask the effects of processing and storage. The resulting product does not taste like fresh squeezed orange juice, but rather tastes like Simply Orange.

90.     Regardless of the time of year, Simply Orange tastes the same even though it is made from different varieties and different blends of oranges that ripen at different times of the year because Coca-Cola uses added flavoring to maintain product consistency to address variations in the quality, variety, source, and ratios of oranges used (e.g., Valencia, Hamlin or Pera).

91.     Coca-Cola adds back a greater volume of volatile compounds and/or better quality volatile compounds to its Simply Orange to: restore flavoring lost by the deleterious effects of processing and long-term storage; create Simply Orange's signature flavor; and ensure consistent taste and quality.

92.     Coca-Cola fails to mention the use of flavor packs or that it is the addition of flavor packs to the Simply Orange that makes it taste "fresh" and masks the effects of processing and storage.

93.     Coca-Cola claims falsely that Simply Orange is not flavored and deliberately omits any reference to Coca-Cola's use of or reliance upon flavor packs that are designed by flavorists, not grown in an orange grove.

94.     Coca-Cola does not disclose to consumers on its labeling or mention in its advertising that its Simply Orange is dependent upon and enhanced by added flavoring and aroma. In fact, Coca Cola states just the opposite. Coca Cola expressly advertises on its website that Simply Orange is not flavored and nothing is added.

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 20 of 34

95.     Coca-Cola also claims on its website that the quality, flavor, and characteristics of Simply Orange are a result of gentle squeezing, which is a far cry from the reaming and extraction methods actually used.

96.     Reasonable consumers desirous of 100% Pure orange juice have been deceived into purchasing Simply Orange because Coca-Cola does not disclose its use of flavoring.

97.     Flavor packs, which are made from processed orange oil and essence, are not "processing aids"[4] or "incidental additives" as those terms are defined by the United States Food and Drug Administration because they are added in significant levels and serve a technical function.

98.     A 1993 FDA ruling confirmed that orange oil and essence do not qualify as "incidental additives" under an exemption because oils and essence are added to fruit juice for the purposes of fulfilling certain technical functions such as achieving uniform quality and organoleptic properties, and the level of use of the added ingredients is not insignificant. 58 Fed. Reg. 2850 (Jan. 6, 1993).

99.     Flavor packs should not be added to Simply Orange unless they are clearly identified on the product label.

---

[4]     The FDA defines processing aids as:

> (a) Substances that are added during the processing of a food but are removed in some manner from the good before it is packaged in its finished form;
> (b) Substances that are added to a food during processing, are converted to constituents normally present in the food, and do not significantly increase the amount of constituents naturally found in the food; or
> (c) Substances that are added to a food for their technical or functional effect in the processing but are present in the finished food at insignificant levels and do not have a technical function effect in that food.

http://www.fsis.usda.gov/pdf/determination_of_processing_aids.pdf

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 21 of 34

100.  By failing to identify the inclusion of flavor packs while including descriptors such as "100% Pure," natural, "Honestly Simple", and "unfooled around with," the labeling, advertisements, and marketing materials for Simply Orange are deceptive and misleading.

## G.  Flavor Is The Most Important Quality Criteria For Consumers

102.  Flavor has the strongest effect on quality impressions by consumers. Similarly, added flavorings are second only to added coloring in the disapproval they engender in consumers.

103.  Flavor, more than any other quality criteria for food or beverages, has a double meaning: it represents both substance content and physical properties.

104.  Coca-Cola understands that flavor guides consumers' purchasing decisions and their willingness to pay for a product.

105.  Coca-Cola also understands by experience that when flavor expectations are met or exceeded, it generates repeat sales and fosters consumer loyalty.

106.  Flavor plays a central role in enhancing the value and appeal of Coca-Cola's Simply Orange.

107.  A clear, consistent product flavor is crucial for Coca-Cola to ensure consumer satisfaction and maintain the appeal of Simply Orange.

## H.  Coca-Cola Misrepresents Simply Orange Is "100 Pure Squeezed Orange Juice"

108.  Coca-Cola leaves out the details about how its Simply Orange is produced, processed, and flavored in its advertisements and on its cartons and containers.

109.  Coca-Cola has engaged in a uniform marketing and advertising program representing that Simply Orange is "100% Pure Squeezed Orange Juice," "Honestly Simple," natural and made from fresh oranges to induce consumers to purchase Simply Orange in reliance

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 22 of 34

upon these representations. These representations are prominently displayed on Coca-Cola's label, and within Coca-Cola's advertisements, promotional materials, and website.

110. Coca-Cola's television commercials, print advertising, and on-line marketing is false and misleading in that it implies that the juice inside the carton is "100% Pure Squeezed" orange juice with nothing added.

111. When Florida is not producing oranges, Coca-Cola's Simply Orange is a mixture of Florida juice, some or all of which has been stored from previous seasons, and Pera orange juice processed in Brazil and shipped to the United States.

112. Processed not-from-concentrate orange juice from Brazil is exported to ports in the United States in converted bulk carriers, tankers, and other massive shipping vessels. These orange juice tankers carry millions of gallons of orange juice cargo in cylindrical tanks.

113. Brazil contributed as much as 20% of the juice contained in Coca-Cola Simply Orange at times during the Class Period.

114. While Coca-Cola provides videos and images of its groves in Florida, it has never advertised or shown pictures of massive orange juice tankers that carry millions of gallons of orange juice cargo in enormous cylindrical tanks, much less revealed its dependence upon them and their cargo.

115. Coca-Cola's representations that Simply Orange is "100% Pure Squeezed Orange Juice" and natural pertain to the composition, attributes, characteristics, nutritional value, health qualities and value of its Simply Orange. Therefore, Plaintiff and members of the Class purchased products that they would not have purchased or paid more than they otherwise would have been willing to pay if the Simply Orange they purchased had not been mislabeled.

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 23 of 34

# VII.

## FACTUAL ALLEGATIONS -- PLAINTIFF

116.   The allegations set forth in paragraphs 1-115 herein are incorporated into this section by reference as if set forth verbatim.

117.   Plaintiff, since April 2008, has purchased at grocery stores and other retail locations, utilizing her own funds, numerous bottles of Simply Orange "100% Pure Squeezed Orange Juice." These purchases were made in Miller County, Arkansas and elsewhere.

118.   In deciding to make these purchases of Simply Orange "100% Pure Squeezed Orange Juice," Plaintiff reasonably and justifiably relied on affirmative, material misrepresentations and an express warranty by Coca-Cola in its labeling, advertising and via other media, that Simply Orange was 100% pure and natural orange juice.

119.   Plaintiff's reasonable and justifiable reliance on these misrepresentations induced her to pay a premium for the Simply Orange product, over and above what she would otherwise pay for a bottle of orange juice that did not have the misrepresented characteristics and features of Simply Orange.

120.   Coca-Cola, despite having actual knowledge of the facts underlying its misrepresentations and deception, has continued to market Simply Orange as "100% Pure Squeezed Orange Juice."

## VIII.

## PLAINTIFF'S CAUSES OF ACTION

### A.    Breach of Express Warranty

121.   The allegations set forth in paragraphs 1-120 herein are incorporated into this section by reference as if set forth verbatim.

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 24 of 34

122.    Plaintiff and Class Members, as purchasers of Simply Orange, were all exposed to and received Coca-Cola's deceptive statements about Simply Orange in its labeling, advertising and through other media. These statements went far beyond Coca-Cola's mere opinion or commendation of Simply Orange, but instead were affirmations of fact or promises made by Coca-Cola to Plaintiff and Class Members about the contents of Simply Orange, which relates to directly to Simply Orange.

123.    Plaintiff and Class Members received an express warranty from Coca-Cola that Simply Orange is, among other things, 100% pure and natural orange juice.

124.    Receipt of this express warranty was part of the basis of the bargain with regard to Plaintiff and Class Members purchasing the Simply Orange product.

125.    At the time of Plaintiff and Class Members purchased the Simply Orange product and received their express warranties, such product was not comprised of 100% pure and natural orange juice.

126.    Coca-Cola has always had notice that Simply Orange has not been 100% pure and natural orange juice. Coca-Cola, however, has not cured or otherwise remedied the damages caused to Plaintiff and Class Members as a result of its deceptive conduct.

127.    Coca-Cola thus has breached an express warranty to Plaintiff and Class Members. Such breach of express warranty caused or proximately caused damages to Plaintiff and the Class Members as set forth below.

**B.    Breach of Implied Warranty of Merchantability**

128.    The allegations set forth in paragraphs 1-127 herein are incorporated into this section by reference as if set forth verbatim.

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 25 of 34

129.     Plaintiff and Class Members all purchased, with their own funds, the Simply Orange product. Plaintiff and Class Members are persons that would reasonably be expected to purchase and use the Simply Orange product.

130.     Plaintiff and Class Members, with their purchases, received an implied warranty of merchantability from Coca-Cola that Simply Orange is fit for the ordinary purposes for which it is used, *i.e.* the consumption by consumers of a 100% pure and natural orange juice, free from undesirable artificial flavor enhancements and preservatives.

131.     At the time of Plaintiff and Class Members purchased the Simply Orange product and received their implied warranties of merchantability, Simply Orange was not comprised of 100% pure and natural orange juice. It instead contained many undesirable artificial flavor enhancements and preservatives, and thus was not fit for the ordinary purposes for which Simply Orange is or should be used.

132.     Coca-Cola has always had notice that Simply Orange has not contained 100% pure and natural orange juice. Coca-Cola, however, has not cured or otherwise remedied the damages caused to Plaintiff and Class Members as a result of its deceptive conduct.

133.     Coca-Cola thus has breached an implied warranty of merchantability to Plaintiff and Class Members. Such breach of implied warranty of merchantability caused or proximately caused damages to Plaintiff and the Class Members as set forth below.

**C.     Unjust Enrichment**

134.     The allegations set forth in paragraphs 1-133 herein are incorporated into this section by reference as if set forth verbatim.

135.     By deceptively concealing the true nature of the Simply Orange product from Plaintiff and Class Members, and by affirmatively misrepresenting it is comprised of 100% pure

and natural orange juice, Coca-Cola unjustly enriched itself at the expense of Plaintiff and Class Members.

136. Because of this unjust enrichment, Coca-Cola should be disgorged of amounts wrongfully retained – including, without limitation, its revenues derived from the Simply Orange purchases of Plaintiff and Class Members -- and/or required to make restitution to Plaintiff and Class Members of benefits received, retained or appropriated.

137. Such restitution of benefits received, retained or appropriated would be just and equitable.

138. Pleading in the alternative, Plaintiff and Class Members have no adequate remedy at law, thus making her assertion of unjust enrichment all the more appropriate.

**D.   Fraud**

139. The allegations set forth in paragraphs 1-138 herein are incorporated into this section by reference as if set forth verbatim.

140. Coca-Cola, with its deceptive labeling and advertising about Simply Orange's contents, made false representations of material fact to Plaintiff and Class Members.

141. Coca-Cola knew these representations were false.

142. By making the representations, Coca-Cola intended to induce Plaintiff and Class Members to purchase the Simply Orange product.

143. Plaintiff and Class Members reasonably and justifiably relied on Coca-Cola's misrepresentations about Simply Orange.

144. Coca-Cola's misrepresentations caused or proximately caused damages to Plaintiff and the Class Members as set forth below.

**F.     Violation of the Arkansas Deceptive Trade Practices Act**

145.     The allegations set forth in paragraphs 1-144 herein are incorporated into this section by reference as if set forth verbatim.

146.     The Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. Section 4-88-101, *et seq.*, is designed to protect consumers from deceptive, unfair, and unconscionable trade practices.  The ADTPA is a remedial statute, which is to be liberally construed in favor of consumers.

147.     The practices employed by Coca-Cola in selling Simply Orange to Plaintiff and Class Members were false, deceptive, unfair, unconscionable, and misleading.  In particular, Coca-Cola's sales of Simply Orange based on the aforementioned misleading and marketing was deceptive, unfair, unconscionable, and misleading.

148.     The Simply Orange product is a "good" and Plaintiff and Class Members are "persons" within the meaning of the ADTPA.

149.     Coca-Cola's wrongful actions relating to distribution, marketing, and sales of Simply Orange violate Ark. Code Ann. Sections 4-88-107(a)(1), (3), and (10), and 4-88-108(1) and (2).

150.     Coca-Cola was in a superior position relative to Plaintiff and Class Members with respect to the contents of Simply Orange.  Coca-Cola, with its labeling and other forms of marketing, acted with the intent to cause consumer reliance on its misrepresentations and/or material omissions, and reliance by Plaintiff and Class Members did, in fact, occur.

151.     Coca-Cola's violations of the ADTPA resulted in Plaintiff and Class Members (all "consumers") purchasing Defendants' misrepresented product, Simply Orange.

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 28 of 34

152.     Plaintiff and Class Members suffered actual damages as a result of Coca-Cola's deceptive and unfair trade acts and practices, and such harm can be measured by, without limitation, either the "benefit-of-the bargain," "out-of-pocket," or restitution damages models discussed below.

## IX.

## CLASS ACTION ALLEGATIONS

153.     The allegations set forth in paragraphs 1-152 herein are incorporated into this section by reference as if set forth verbatim.

154.     The class as defined herein – involving thousands of Arkansas-citizen purchasers of Simply Orange -- is so numerous that joinder of all members is impracticable.  Ark. R. Civ. P. 23(a)(1).

155.     There are questions of law or fact common to the class, such as, but without limitation:

> **BREACH OF EXPRESS WARRANTY:**  Whether, Coca-Cola, with its labeling and other forms of marketing or advertising, made an express warranty regarding Simply Orange to Plaintiff and Class Members.  Further, whether Coca-Cola breached such express warranty.

> **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY:** Whether, given its actual contents against the backdrop of how it is marketed, Simply Orange is fit for the ordinary purpose for which it used, and, if not, whether sales of Simply Orange breached an implied warranty of merchantability to Plaintiff and Class Members.

> **UNJUST ENRICHMENT:**  Whether Coca-Cola, by deceptively marketing, labeling and selling Simply Orange, has unjustly retained benefits that it should restore to Plaintiff and Class Members.

> **FRAUD:**  Whether Coca-Cola, with its deceptive labeling and advertising about Simply Orange's contents, intentionally, to induce sales, made false representations of material fact to Plaintiff and Class Members.  Further, whether

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 29 of 34

Plaintiff and Class Members relied on such misrepresentations, and were damaged by such reliance.

**DAMAGES:** Whether Plaintiff and Class Members have suffered and are entitled to different forms of damages.

**RESTITUTION:** Whether Plaintiff and Class Members are entitled to restitution based on, without limitation, Coca-Cola's unjust-enrichment-related misconduct centered on its deceptive marketing, labeling and selling of Simply Orange.

Accordingly, the commonality requirement is satisfied. Ark. R. Civ. P. 23(a)(2).

156. The claims and defenses of the representative party, Plaintiff, are typical of the claims or defenses of Class Members. Ark. R. Civ. P. 23(a)(3).

157. Plaintiff will fairly and adequately protect the interests of Class Members. Ark. R. Civ. P. 23(a)(4). Representative counsel is qualified, experienced and can generally conduct this class-action litigation. There is no evidence of collusion or conflicting interest between Plaintiff and the Class Members. Finally, Plaintiff has reviewed the pleadings in this matter, and understands the allegations against Coca-Cola. Plaintiff is very much interested in obtaining relief for herself and Class Members in Arkansas. Plaintiff has and will stay in touch with representative counsel during this litigation, understands her duties as class representative, and is willing to comply with them. Plaintiff is not at all reluctant to assist with discovery requests, participate in oral discovery, and generally assist representative counsel with the decisions that need to be made during the course of this litigation.

158. Questions of law or fact common to Class Members predominate over any questions affecting only individual members. Ark. R. Civ. P. 23(b). A common, overarching factual or legal inquiry, especially centered on Coca-Cola's deceptive marketing, labeling and sales of Simply Orange to Plaintiff and Class Members, will satisfy Rule 23(b)'s predominance requirement. Moreover, an overarching factual or legal inquiry creates predominance, even

though individual issues concerning matters such as class-member knowledge, detrimental reliance or damages may exist.

159. Coca-Cola's deceptive marketing, labeling and sales of Simply Orange to Plaintiff and Class Members, all as alleged herein, is precisely the type of overarching factual and legal inquiry or matter that satisfies the Rule 23(b) predominance requirement under Arkansas class action procedure.

160. A class action is superior to other available methods for the fair and efficient adjudication of Coca-Cola's acts and omissions in connection with its Simply Orange product. Ark. R. Civ. P. 23.

161. The Court possesses wide discretion to find superiority. Moreover, the relief sought by Plaintiff and Class Members is relatively small if sought on an individual basis. Accordingly, it is not economically feasible for Class Members to pursue Coca-Cola individually. Further, the possibility of multiple trials supplying inconsistent results and wasting judicial resources favors class action superiority, as does the fact numerous meritorious claims might go unaddressed absent class certification. Finally, this class action presents no problems from a manageability standpoint.

## X.

### DAMAGES/DISGORGEMENT/RESTITUTION

162. The allegations set forth in paragraphs 1-161 herein are incorporated into this section by reference as if set forth verbatim.

163. Subject to the limitations on recovery established by the admissions, representations and stipulations set forth in paragraphs 14-18, *supra*, Plaintiffs and Class Members seek appropriate money damages in an amount necessary to compensate them for

having purchased a product – Simply Orange – that was far different from what Coca-Cola represented or warranted it to be. That is, Plaintiff and the Class are seeking the difference in value between what was represented or warranted to them by Coca-Cola, and what they actually purchased and received, value-wise, with their purchase of Simply Orange. Plaintiff and Class Members, in terms of obtaining this "benefit of the bargain" relief, allege and assert the recovery of this difference in value will make them whole, in light of the fact they were overcharged for Simply Orange. *See e.g.* UCC §2-714(b).

164. Alternatively, further subject to the limitations on recovery established by the admissions, representations and stipulations set forth in paragraphs 14-18, *supra,* and based on Coca-Cola having been unjustly enriched, Plaintiff and Class Members seek disgorgement and restitution from Coca-Cola, calculated as the Simply Orange revenues Coca-Cola received from Plaintiff and Class Members in Arkansas since April 2008.

165. Further, and subject to the limitations on recovery established by the admissions, representations and stipulations set forth in paragraphs 14-18, *supra,* Plaintiff and Class Members seek recovery of their reasonable and necessary attorney fees and costs.

166. Further, and subject to the limitations on recovery established by the admissions, representations and stipulations set forth in paragraphs 14-18, *supra,* Plaintiff and Class Members seek recovery of any available pre and post judgment interest.

167. Further, and subject to the limitations on recovery established by the admissions, representations and stipulations set forth in paragraphs 14-18, *supra,* Plaintiff and Class Members seek such other and further relief, both at law and in equity, as the Court determines fair, reasonable, appropriate and/or deems just.

## XI.

### JURY DEMAND

168. Plaintiff demands a jury trial on all issues so properly triable.

## XII.

### PRAYER

169. WHEREFORE, PREMISES CONSIDERED, Plaintiff and Class Members respectfully pray that the Court:

(a) Certify this action as a class action as permitted by Ark. R. Civ. P. 23, appoint Plaintiff as class representative, and Plaintiff's counsel class representative counsel;

(b) Conduct a trial on the merits and, thereafter, enter judgment against Coca-Cola in favor of Plaintiff and Class Members consistent with the damages amounts, restitution and/or other relief requested herein (subject to the limitations on recovery established by the admissions, representations and stipulations set forth in paragraphs 14-18, *supra*).

(c) Grant Plaintiff and Class Members such other and further relief, both at law and in equity, as the Court determines fair, reasonable, appropriate and/or deems just.

Respectfully submitted,

By:_____
James C. Wyly
Arkansas Bar No. 90158
Sean F. Rommel
Arkansas Bar No. 94158
WYLY-ROMMEL, PLLC
4004 Texas Boulevard
Texarkana, TX 75503
(903) 334-8646 -- Telephone
(903) 334-8645 -- Facsimile

**CLASS ACTION COMPLAINT**

Page 33

David W. Crowe (to be admitted pro hac vice)
Texas State Bar No. 05164250
John W. Arnold
Arkansas Bar No. 94163
BAILEY/CROWE & KUGLER, L.L.P.
6550 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
(214) 231-0555 -- Telephone
(214) 231-0556 -- Facsimile

**COUNSEL FOR BETTY MOSS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED**

Case 4:12-cv-01247-FJG   Document 3   Filed 07/06/12   Page 34 of 34